HOLM and others, Respondents, vs. HOLM and others, Appellants.

*February 5 — February 23, 1892.*

*Religious societies: Incorporation of factions in a church: Title to property.*

> In a Norwegian Evangelical Lutheran church there were two factions, differing on questions of doctrine, and known as Missourians and Anti-Missourians. At a meeting of the whole association the minister declared that the offices of several trustees who belonged to the Anti-Missourian faction were vacant by reason of the heresy of the incumbents, and he, with the Missourian faction, withdrew from the meeting and elected new trustees in place of those mentioned. Thenceforward each faction claimed to be the true church and maintained a separate organization, and by agreement each held separate services in the church building under a pastor of its own choice. Afterwards the Anti-Missourians, upon due notice to all, proceeded to incorporate the church under the statutes. *Held,* that thereby the whole association, including both factions, became incorporated, and the legal title to the church property became vested in such corporation. The subsequent incorporation of the Missourian faction under another name did not affect the prior corporation or divest it of any of the church property. *West Kosh-konong Congregation v. Ottesen,* 80 Wis. 62, followed.

APPEAL from the Circuit Court for *Adams* County.

This action is to restrain the defendants and their associates from withholding from the plaintiffs and their associates the use, occupation, and enjoyment of the church property described, on the theory that they are tenants in common. The issue being joined, and the trial had, the court found in effect:

1. That July 27, 1853, the Norwegian Evangelical Lutheran Church of Roche-a-Cree, Adams county, Wis., was organized as a voluntary association by and composed of the Norwegian settlers in and about the town of Strong's Prairie in said county; that said association continued its

organization by adopting a constitution, and by the regular election of trustees, to have charge of its temporalities and affairs, up to and including the meeting of January 9, 1888.

2. That in June, 1855, the said association became a member of the synod for the Norwegian Evangelical Lutheran Church of America, existing in Wisconsin and other states, composed of Lutheran congregations and ministers thereof and professors of institutions of learning connected with said synod.

4. That in 1859 said association built upon said lands described a log church building for the use of said congregation.

3. That April 10, 1862, Mikkelsen and wife of the same place conveyed by warranty deed to four trustees of said church of Roche-a-Cree, therein named, and their successors in office, the land therein described, for the use of said church, reciting therein a consideration of three dollars.

5. That February 12, 1865, said log church burned down, and May 20, 1865, one Ardold and wife of said place conveyed by warranty deed to four persons therein named, as trustees of said church of Roche-a-Cree, and to their successors in office, the land therein described, for said church, reciting a consideration of one dollar.

6. That in 1865 said association built a new church building on said last-described piece of land, for its use as a church, and the same was destroyed by a tornado September 24, 1872.

7. That in 1873 said voluntary association commenced the erection of a new church building on said land, and completed the same in 1880, and the same was dedicated November 16, 1881.

8. That said church building, together with said two pieces of land and their appurtenances, were worth the sum of $3,000.

9. That the costs and expenses of erecting and maintaining said church and religious services therein were borne by the voluntary contributions of the members of said association, and by other Lutheran congregations belonging to said synod.

10. That in 1883 or 1884 a controversy arose in said synod respecting the doctrine of election or predestination. That in the year 1887 said controversy separated the religious association into two parties,— one known as the "Missourians," composed of the plaintiffs and their associates, and embracing about twenty-five or thirty families, who were in favor of remaining in the synod; and the other, known as the "Anti-Missourians," composed of the defendants and their associates, embracing about sixty or seventy families, who were in favor of withdrawing from the same.

11. That September 26, 1887, a meeting of said voluntary association was held, and as a result a committee of three from each side was elected to negotiate upon some agreement, and the meeting thereupon adjourned to October 31, 1887.

12. That at said last-mentioned date the Anti-Missourians of the committee, being a majority thereof, reported in favor of withdrawing from the synod, and the Missourian part thereof against such withdrawal, and proposed a compromise, which was not agreed to. That, upon the question of withdrawal from the synod being put, the Missourians presented a written protest, signed by thirty-nine members. That thereupon a vote was taken, and sixty-seven voted to withdraw from the synod and twenty-six against such withdrawal. That the Missourians thereupon declared themselves to be the right and original Evangelical Lutheran Church of Roche-a-Cree, which is connected with said synod and abides by the constitution and rules of said board and synod.

13. That at the annual meeting of said voluntary associ-

ation held January 9, 1888, in the church building, and after some preliminary business the minister of said congregation declared, in effect, that as the trustees had declared themselves to be among those who withdrew from the synod their offices must be regarded as vacant; and the Missourian party thereupon withdrew and went to the north side of the church, and then and there proceeded to and did in form elect a full set of trustees to act in place of those whose seats had thus been declared vacant, and then and there took steps to incorporate the original congregation, by providing for the signing and acknowledging of the certificate of incorporation of said church, and which certificate was made out and recorded January 10, 1888; but such organization was void, for the reason that no previous notice of the same had been given as required by law. That the Anti-Missourians then proceeded as a body to elect a president and secretary in place of those who had thus withdrawn, and also some minor officers of the congregation whose terms of office had theretofore expired.

14. That since January 9, 1888, no joint meetings of said two parties have been held, but that each has kept up and maintained its separate organization, and has held and conducted its separate services under a pastor of its own choice.

15. That in March, 1888, a committee from each of said congregations finally agreed upon a report to the effect that both congregations should continue in the same association, and that the incorporation of January 10, 1888, be withdrawn and the old association be incorporated of all, under the later statutes; that the trustees of both congregations should represent the corporation; that there be held one annual meeting every year, and, if necessary, special meetings of said corporation; that the trustees and other officers of the corporation should be elected at such annual meeting; that the Anti-Missourians should have the use of the church two thirds of the time, and the Missouri-

ans one third, with an opportunity for variations; that the expenses of painting, repairing, and keeping the church in order should be in common, by subscriptions by both congregations; that if either party wished to sell the other should have the first privilege of buying; that the rights of the respective congregations in the church property should be in proportion to the voting members when incorporated; that, when incorporated, and officers thereof elected, the papers, minutes, and books belonging to the association previously should be delivered to and taken care of by such new officers, for both congregations.

17. That in January, 1889, the Anti-Missourians attempted to give notice to the Missourian party of the meeting to be held in the church February 7, 1889, at which it was proposed to incorporate the church of Roche-a-Cree; that said notice was not duly and lawfully given to said Missourians; that said Anti-Missourians also gave due notice in their own meeting, and did meet at said church January 7, 1889, at which time and place a protest, signed by a large majority of said Missourians, was presented by one of their number, but otherwise they did not attend, which protest was to the effect that said meeting had no power to incorporate the whole congregation; that a certificate of incorporation was made, acknowledged, and recorded by the Anti-Missourians, who thereupon became duly incorporated under the statutes by the name of the " Norwegian Evangelical Lutheran Church of Roche-a-Cree, Adams County, Wisconsin."

18. That September 25, 1889, the Missourian congregation caused to be made, filed, and recorded a certificate of its incorporation in due form of law, wherein and whereby it became duly incorporated under the name of the " Synodical Norwegian Lutheran Church of Roche-a-Cree, Adams County," and the members thereof so incorporated were all of them members of said original voluntary association prior to January 9, 1888.

19. That the members of said two corporations embraced all who were members of said original voluntary association at the time of such division.

20. That at the meeting of said Anti-Missourians, January 13, 1890, they offered the Missourians the use of the church edifice for services every fourth Sunday, under certain conditions, but which offer was not accepted.

21. That the plaintiffs are trustees of said Missourian corporation, and the defendants are the trustees of said Anti-Missourian corporation.

22. That June 5, 1889, the defendants, as such trustees, took sole and exclusive possession of said church building and property, and entirely excluded the plaintiffs, as such trustees, therefrom, and have ever since held sole and exclusive possession thereof, to the exclusion of said plaintiffs as such trustees, unless the members of the Missourian party should join said Anti-Missourian organization as members thereof.

And as conclusions of law the court found, in effect:

1. That the plaintiffs, as such trustees, were entitled to the use and occupation of said church property, jointly and in common with the defendants as such trustees.

2. That the plaintiffs, as such trustees, were entitled to have the use and occupation of said church property divided between said two corporations in proportion to the number of members of said original voluntary association belonging or adhering to the said two separate congregations respectively January 9, 1888.

3. That the plaintiffs, as such trustees, and their associates, were entitled to judgment forever enjoining and restraining the defendants, as such trustees, and those associated with them, from withholding from the plaintiffs and their associates the use, occupation, and enjoyment of said church property in common with the said defendants and their associates, as herein provided. And judgment, with

costs, in favor of the plaintiffs was thereby ordered accordingly.

From the judgment entered thereon accordingly the defendants appeal.

For the appellants there were briefs by *Pinney & Sanborn*, and oral argument by *A. L. Sanborn*. They argued, among other things, that there had been no division of the congregation or the property. The withdrawal of the minority faction could not divide or affect the congregation or society, and the withdrawing members could take with them no part of the property. *Smith v. Smith*, 3 Desaus. Eq. (S. C.), 581; *M. E. Church v. Wood*, 5 Ohio, 283; *Brown v. Porter*, 10 Mass. 93; *Baker v. Fales*, 16 id. 488; *Den v. Bolton*, 12 N. J. Law, 214; *Cammeyer v. United German Luth. Churches*, 2 Sandf. Ch. 214; *Wiswell v. First Cong. Church*, 14 Ohio St. 31, 44. The majority must control the right to the use of the property. *Watson v. Jones*, 13 Wall. 725; *Fadness v. Braunborg*, 73 Wis. 257; *Shannon v. Frost*, 3 B. Mon. 253; *Smith v. Nelson*, 18 Vt. 511; *Hackney v. Vawter*, 39 Kan. 615; *Lawson v. Kolbenson*, 61 Ill. 405; *Fernstler v. Siebert*, 114 Pa. St. 196, 205; *Presbyterian Cong. v. Johnson*, 1 Watts & S. 9; *Bartholomew v. Lutheran Cong.* 35 Ohio St. 567; *McRoberts v. Moudy*, 19 Mo. App. 26; *Sutter v. Trustees*, 42 Pa. St. 503; *Keyser v. Stansifer*, 6 Ohio, 363; *Watkins v. Wilcox*, 66 N. Y. 654; *Trustees v. Bly*, 73 id. 323, 329; *Hadden v. Chorn*, 8 B. Mon. 76; *Miller v. English*, 21 N. J. Law, 317; *Eggleston v. Doolittle*, 33 Conn. 396; *Horton v. Baptist Church*, 34 Vt. 309; *Petty v. Tooker*, 21 N. Y. 267; *Parish of Bellport v. Tooker*, 29 Barb. 256; *West Koshkonong Cong. v. Ottesen*, 80 Wis. 62.

*John Ollis*, attorney, and *Geo. W. Bird*, of counsel, for the respondents, contended: 1. When the original congregation acquired the property all its members became seised thereof as joint tenants or tenants in common; and when it became divided into two separate congregations the members of the

latter continued to be so seised and each congregation entitled to its use and enjoyment in common with the other, and to be protected from exclusion therefrom by the other, and to have the property divided between them in proportion to their respective membership. *Farraria v. Vasconcellos*, 31 Ill. 25; *Niccolls v. Rugg*, 47 id. 47; *Arts v. Gutherie*, 75 Iowa, 674; *Hewett v. Hutch*, 57 Vt. 16; *Hale v. Everett*, 53 N. H. 9; *Gartin v. Penick*, 5 Bush, 110; *Presbyterian Congregation v. Johnson*, 1 Watts & S. 1; *Wicks v. Nedrow*, 28 Neb. 386; *Nelson v. Benson*, 69 Ill. 27; *Avery v. Baker*, 27 Neb. 388; *Byam v. Bickford*, 140 Mass. 31; *East Haddam Cent. Bap. Church v. East Haddam Baptist Eccl. Soc.* 44 Conn. 259; *Higgins v. Riddell*, 12 Wis. 587; *Evenson v. Ellingson*, 72 id. 242. 2. The plaintiffs are enentitled to maintain this equitable action because it affords at least a more adequate and complete remedy than can be afforded at law. *Lawson v. Menasha W. W. Co.* 59 Wis. 393; *Morgan v. Beloit*, 7 Wall. 613; *Wilson v. Mineral Point*, 39 Wis. 160; *Trustees v. Hoessli*, 13 id. 348; *Clark v. J., M. & I. R. Co.* 44 Ind. 248; *Lutheran Evang. Church v. Gristgau*, 34 Wis. 328; *Hackney v. Vawter*, 39 Kan. 615; *Beatty v. Kurtz*, 2 Pet. 577; *Dwenger v. Geary*, 113 Ind. 106; *Trustees v. Walsh*, 57 Ill. 363; *Ladies' Ben. Soc. No. 2 v. Ben. Soc. No. 2*, 2 Tenn. Ch. 77; *Sohier v. Trinity Church*, 109 Mass. 1; *First Presby. Church v. Second Presby. Church*, 2 Brews. 372; *Hodge v. Giese*, 43 N. J. Eq. 342; *Thomas v. Musical Mut. Prot. Union*, 2 N. Y. Supp. 195.

CASSODAY, J. The Norwegian Evangelical Lutheran Church of Roche-a-Cree has been unfortunate. Its first church building was destroyed by fire in 1865. Its second church building was destroyed by a tornado in 1872. But perhaps a greater misfortune than either has been the dissension among its members which has existed during the last eight years respecting the doctrine of election or pre-

destination, and, as a consequence, whether the church should or should not withdraw from the synod.   But this court has repeatedly disclaimed all right "to determine mere questions of faith, doctrine, or schism, not necessarily involved in the enforcement of ascertained trusts" or the "determination of legal rights."   *Fadness v. Braunborg*, 73 Wis. 293; *Grace v. Dempsey*, 75 Wis. 319.   "Courts deal with tangible rights, not with spiritual conceptions, unless they are incidentally and necessarily involved in the determination of legal rights."   *Ibid.*

The church consisted of a voluntary association down to February 7, 1889.   Prior to that date the title to the churches in which the members of the association worshiped was vested in trustees named in the deeds, and their successors in office, as mentioned in the foregoing statement.   The trusts imposed by such deeds appear to have been valid upon the principles stated by this court in *Fadness v. Braunborg*, 73 Wis. 287–291.   The two factions remained and worshiped together until January 9, 1888.   On that day both factions met together at the regular annual meeting of the association.   At that time all the trustees and a large majority of the association belonged to the faction known as the "Anti-Missourians," represented by the defendants; but the minister and a minority of the association belonged to the faction known as the "Missourians," represented by the plaintiffs.   At that meeting the old controversy was renewed, and the minister declared, in effect, that the offices of the several trustees were vacant by reason of the heresy of the several incumbents, and thereupon the Missourians withdrew from the regular meeting to the north side of the church, and there, without any previous notice, went through the form of electing new trustees in place of those whom they claimed to have thus deposed.

From that time until February 7, 1889, each of the two

factions, claiming to be the true church and representing the whole association, by agreement conducted separate services in the church under its own pastor; but there was no incorporation until the date last named. At that time it is claimed on the part of the defendants that the whole association, including both factions, upon notices duly given, became legally incorporated under the statutes; while on the part of the plaintiffs it is claimed that such incorporation included only and was confined to the Anti-Missourians; and the court in effect so finds. The court also finds, in effect, that the defendants attempted to give notice to the Missourians of the meeting for such incorporation, but that it was ineffectual. It appears that a copy of the notice of such meeting was duly nailed up upon the outside of the outside door of the church, in which the Missourians at the time worshiped, and also on the outside of the vestibule door to the same; that at the opening of the meeting of the Missourians for giving such notice a copy thereof was handed to the pastor of said Missourians, with the request that he read the same to the meeting or announce that the bearer thereof would read it; that such pastor did neither, and the audience left before there was an opportunity for such bearer to read it; that a written protest, signed by twenty-three gentlemen, members of the faction known as "Missourians," was presented at the meeting for such incorporation, objecting and protesting against any action or proceeding under or in pursuance of said notice on several grounds, but without any claim or pretense that such notice had not been given.

The facts bring the case squarely within the rulings of this court in *West Koshkonong Congregation v. Ottesen*, 80 Wis. 62. For the reasons there given by Mr. Justice WINSLOW we must hold that the whole association, including both factions, became duly incorporated February 7, 1889, notwithstanding such prior declaration of heresy, withdrawal,

separate pastors and service.   Upon such incorporation of the society, the legal title to such church property became vested in the corporation under the statutes; and hence such property thereby became subjected to the exclusive control and management of the trustees legally elected under the statutes and their successors in office, in trust, however, for such uses and purposes of said church or society.  *Fadness v. Braunborg*, 73 Wis. 281.   To hold otherwise would stimulate factional controversies and tend to defeat the primary object of church organization and worship.   True, some months after such incorporation of the whole society, the faction represented by the plaintiffs became separately incorporated under a different name.   But that did not dissolve the former corporation, nor divest it of any of the church property or rights of property.   The members of the faction represented by the plaintiffs may, however, still be regarded as among the corporators, having the same interest in the property as other members of the society.   The spirit of fairness and good fellowship which seems to have accompanied most of the negotiations between the two factions gives us reason to hope that by mutually forbearing one another in love they may yet reunite and again worship in the bond of peace.

The opinions in the cases cited so fully cover all the questions involved in this case as to render further discussion unnecessary.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to dismiss the complaint.

PINNEY, J., took no part.