SPIRITUAL AND PHILOSOPHICAL TEMPLE, Respondent, vs. VINCENT and others, Appellants.

*January 10—January 30, 1906.*

*Voluntary associations: Rights of members: Control of property: Religious societies: Incorporation: Name: Notice: "Stated meeting."*

1. Every participant in a voluntary organization has the absolute right to have its property controlled and administered according to its organic plan and to participate in its affairs in harmony therewith.

2. A statute enabling a voluntary association to be converted into a corporate entity, and existing when the voluntary association was formed, is incorporated into the association agreement by necessary implication, and every member of such association is conclusively presumed to have impliedly agreed, in joining the association, that it might at any future time be converted into

Spiritual and Philosophical Temple v. Vincent, 127 Wis. 93.

a corporate organization according to the statutes regulating the matter.

3. Where a voluntary association is converted into a corporate entity it is not material that the name chosen for the corporation is precisely the one by which the association was known, so long as the corporation is formed for substantially the same purposes as those of the voluntary association.

4. If, in changing to a corporation, the steps taken by a voluntary association leading up to the recording of the certificate of organization are in conformity with law and the certificate valid, the corporation thereby eo instanti comes into existence with its status as regards the property and other rights of the association and membership in the corporation absolutely fixed, and an immediate and complete substitution of the corporate entity for the association follows.

5. In such case the substitution of the corporation and memberships therein for the former association and its memberships is complete, regardless of whether a majority or minority of members of the association participated in bringing about the change, all being free to participate if they so desired.

6. In such case any act done thereafter by persons in control of the corporate affairs in violation of any membership right does not affect the corporate existence or functions. It is a mere private wrong redressible by the appropriate remedy.

7. In an action to determine the right of possession and enjoyment of property formerly possessed by a voluntary association which had been converted into a corporate entity by the action of a minority of its members, the evidence, stated in the opinion, is held to sustain findings negativing all charges of fraud on the part of the minority.

8. Under sec. 1990, Stats. 1898 (providing that not less than three members of any church or society of any religious sect or denomination which shall have been organized in this state, and which at the time maintains regular public worship, may, after due public notice given at some stated meeting, organize a corporation for religious and other specified purposes), a meeting held on the usual day of worship, at the regular home of the society, whether attended by a majority or minority of the members, is a "stated meeting" in the statutory sense.

9. In such case the regular meeting of the association, according to the custom before and after a factional disturbance, is not rendered irregular by the mere circumstance that a part of the members, large or small, saw fit to assemble at some other place. As between the two, the latter was the irregular and the former the regular meeting.

APPEAL from a judgment of the circuit court for Brown county: S. D. HASTINGS, Circuit Judge. *Affirmed.*

Equitable action to restrain defendants from interfering with the possession and enjoyment by plaintiff of property formerly possessed by a voluntary organization, sometimes known as "The Spiritual and Philosophical Congregation" and sometimes as the "Spiritual and Philosophical Temple," involving the question of whether the right to such property is in the plaintiff. The issues raised by the pleaded and pleadable facts material to the rights of the parties as determined by the court upon a trial duly had are sufficiently indicated by the following abstract of the findings:

In 1882 some residents of the city of Green Bay, Wisconsin, organized a religious association as "The Spiritual and Philosophical Congregation of Green Bay." It purchased lot No. 691, according to Navarino's plat of said city, for the purpose of erecting thereon a church building. The expenses thus incurred and for such church building and other expenses of the association were borne by its members. The lot was conveyed to three members as trustees. Until 1900 one Everarts generally served the association as pastor, Mrs. Zwara serving when Everarts was unable to do so. She took his place in the spring of 1901 and continued thereafter to serve until the fall of that year when, because of her illness, one Dewaarzegger succeeded her. Subsequently she recovered and resumed her former place against the wishes, however, of a majority of the members, but in harmony with the officers of the association, except two trustees. Such majority adhered to Dewaarzegger and attended services under him at the residence of his sister in Green Bay. The division was solely over the question as to which of the two persons named should do the preaching. Such officers consisted of a president, vice-president, secretary, treasurer, and three trustees. Except as aforesaid, the church building continued to be the sole meeting place of the members of the association up to the

attempted organization of a corporation, as hereinafter stated, services being held there regularly on Sunday under Mrs. Zwara as preacher. It was the custom of the society after Sunday morning services to have read or given out business notices appertaining to the association affairs. For some time prior to the organization of the corporation such notices were read or given out in the English language, substantially all members of the congregation being sufficiently familiar therewith to understand the same, though in the beginning and for a time thereafter such notices were read or given out in the French language. Sunday, March 1, 1903, at the customary time, the secretary read a notice signed by five members to the effect that March 7th thereafter at 8 o'clock p. m. at the church building there would be a meeting to consider the question of incorporating the association under the laws of the state of Wisconsin. The members present did not do anything to deter any other member from attending on the date the notice was read, nor did they design to give out the notice when none of the dissenting members were present. One of the dissenters was present when the notice was read, and by assistance was enabled to partially apprehend its purport. He understood that a meeting was to be held, according to the notice, to take action in relation to the church property, and so informed some of his associates. About the time the notice was given out the majority members were assembled at the home of Dewaarzegger's sister. No notice of the meeting to consider the question of a corporate organization was given, except as aforesaid, nor did the majority members obtain information thereof. Had such opposing members been present when the notice was read, as they might have been, they would have understood it. At such time and place arrangements were made for the regular election of officers, to take place April 16th following. All officers and trustees but the two belonging to the majority were present. On the day appointed for considering the subject of a corporate organization a meet-

Spiritual and Philosophical Temple v. Vincent, 127 Wis. 93.

ing was held to that end, none of the majority members being present or knowing of the occurrence, except the one who heard the notice read. March 14, 1903, a certificate of organization in due form for a corporation to succeed the association as the "Spiritual and Philosophical Temple" was duly filed and recorded in the office of the register of deeds of Brown county, Wisconsin, the same being the result of the meeting aforesaid. On the day when it was concluded to incorporate the society, notice was given out of a meeting at the church building March 22, 1903, at 2 o'clock p. m., to adopt a constitution and by-laws of the corporation. A meeting was held accordingly. August 9th thereafter, trustees of the corporation were duly elected and qualified and the church property was in due form turned over to the new organization. The fact of the organization of the corporation became known to the majority members immediately after its occurrence. After such organization all persons previously belonging to the association and in good standing were regarded and treated as members of the new organization. Some of them attended services from time to time at the church and paid their regu·· lar dues into the corporate treasury. The annual election of officers of the old organization was customarily held, according to its by-laws, April 26th, in case of that date falling on Sunday, otherwise on the Sunday nearest that date. The majority members, deeming the attempt to organize a corporation invalid, called a meeting for April 26, 1903, to elect trustees of the association as usual. A meeting was accordingly held and a full number of trustees, in form, elected, who thereafter pretended to represent the association in business matters. August 9th thereafter, defendants, claiming that the old organization still existed, took possession of the church building, excluded the plaintiff and its officers therefrom, and thereafter continued to exclude them until required by the mandatory injunction of the court in this action to restore the former situation.

Upon such facts the court decided that the notice given as indicated satisfied the statutory requisites on the subject; that the corporation was accordingly, in due form, created; that it was legal and succeeded to the property and rights of the old organization; and that all members of such organization thereby became members of such corporation, and that plaintiff was entitled to judgment accordingly, enjoining and restraining defendants from interfering with the plaintiff, as regards keeping and enjoying the property formerly possessed by the "Spiritual and Philosophical Congregation." Judgment was according rendered, from which this appeal was taken.

For the appellant there was a brief by *Wigman, Martin & Martin,* and oral argument by *J. M. H. Wigman* and *P. H. Martin.*

For the respondent there was a brief by *Joseph Chopin* and *Kittell & Burke,* and oral argument by *John A. Kittell.*

MARSHALL, J.   It may be conceded that were it not for the fact that, when the voluntary organization was created, the law existed substantially as now, enabling such a society to be converted into a corporate entity, and as a necessary result the ownership and right of possession of what was formerly vested in such society changed to the new creation and memberships in the latter substituted for those in the former, it would not have been competent for the minority, or even a majority, of the members of such organization, with or without a law enacted subsequently to the formation of the society and without the consent of the rest of the members, to take its property and make the substitution indicated as to membership rights.   Every participant in a voluntary organization has the absolute right, which the courts will protect, to have its property controlled and administered according to its organic plan and to participate in its affairs in harmony therewith.   *Schiller Commandery v. Jaennichen,* 116 Mich. 129,

74 N. W. 458, and analogous authorities cited to our attention are recognized as good law, but we need not discuss them because they are wholly inappropriate to the situation before us.

As indicated, the law under which respondent justifies was in existence when the voluntary organization in question was formed. That law, therefore, must be regarded as having been incorporated into the association agreement by necessary implication. Every member must be conclusively presumed to have, impliedly, agreed, in joining the society, that it might at any future time be converted into a corporate organization according to the statutes regulating the matter.

Whether the name chosen for the corporation was precisely the one by which the society was known is not material. The law contemplates that the corporation shall be formed for the same purposes, substantially, as those of the voluntary organization, but that such name may be agreed upon as the parties controlling the matter see fit to select, and which is reasonably appropriate for the purpose.

Neither is it material whether the administration of the corporation, after its creation, was regular, or whether the by-laws adopted were reasonable or unreasonable. If the steps leading up to the recording of the certificate of organization were in conformity with law the corporation thereby *eo instanti* came into existence with its status as regards the property and other rights of the society and memberships in the latter absolutely fixed. The law plainly contemplates, in such a case, the immediate and complete substitution of the corporate entity for the association. Any act done thereafter by persons in control of the corporate affairs in violation of any such membership right does not affect the corporate existence or functions. It is a mere private wrong redressible by the appropriate remedy.

Sec. 1991, Stats. 1898, provides that the "society shall be known and incorporated by the name" determined upon, as evidenced by the certificate of organization, and such certifi-

cate shall be recorded in the office of the register of deeds, and
"when . . . so recorded the society named therein shall be a
corporation and shall possess all the powers and privileges
granted to corporations by chapter 85," etc. So in this case
the substitution of the corporation for the former association
and memberships in the former for those in the latter; regard-
less of whether a majority or minority of members of the
association participated in bringing about the change, all be-
ing free to participate if they so desired, was complete, as in-
dicated in *West Koshkonong Cong. v. Ottesen,* 80 Wis. 62,
49 N. W. 24, when the certificate of organization was re-
corded, if such certificate was valid.

Some question is raised as to whether the members of the
association, who caused the corporation to be formed, pro-
ceeded fraudulently, as regards the nonparticipants. The
trial court did not think so, and we see no good reason to dis-
turb the decision in that regard. It may be that the conduct
of the members of the minority party was not characterized
by that fairness which should distinguish any community of
individuals, especially those of one existing for religious pur-
poses, but we have little or nothing to do with the mere ethical
features of the case. The findings of the court negative, most
distinctly, all charges of fraud on the part of the minority,
and they seem to be fairly supported by the evidence. The
meeting at which the notice was given of the time and place
when the subject of converting the society into a corporate
organization would be considered was free to all members,
and the meeting appointed was likewise free. The notice was
read when and where all members would be expected to be
present if they particularly cared to take careful note of the
purposes of those who regularly attended service held at the
home of the society. It was given out according to custom,
both as to order and manner. It was read at the close of the
regular Sunday service and in the English language. There
was no design to give it out when members of the majority

party were absent, nor was there any active effort to prevent
members of the majority from being present on the day ap-
pointed in the notice. The one member of the majority who
was present when the notice was read, had full opportunity
to understand it, and was aided in that regard by members of
the minority.

The matters to which we have referred aside, it seems to be
conceded that, if the meeting at which the notice was given
was a stated meeting within the meaning of the statute, what
followed resulted in the creation of a corporation in form and
in fact with all the consequences we have indicated. Was it
a stated meeting? That is the vital point.

The language of the statute on the point last suggested to
be examined in answering the above stated question is as
follows:

"The members, over twenty-one years of age, not less than
three in number, of any church or society of any religious sect
or denomination which shall have been organized in this state
and which, at the time, maintains regular public worship
may, after due public notice given at some stated meeting of
such church, . . . organize a corporation for religious, char-
itable or educational purposes in the manner hereinafter pro-
vided." Sec. 1990, Stats. 1898.

The findings respond in detail to all the calls thereof. We
are unable to appreciate the criticism of counsel upon the
trial court's decision on this point. They urge that the meet-
ing of the majority was a stated meeting as well as that of
the minority, though it was not held at the society's church.
That might safely be conceded without aiding appellant in the
least, since the statute makes no requirement for notice to be
given at two stated meetings in the event of the society by
reason of a factional disturbance holding meetings in two
regular places. In such circumstance it seems clear that the
meeting held at the regular home of the society, whether at-
tended and supported by a majority or minority of the mem-
bers, is a stated meeting in the statutory sense. In this case

the regular meetings of the society, according to the custom before and after the factional disturbance, were not rendered irregular by the mere circumstance that a part of the members, large or small, saw fit to assemble at some other place. As between the two, the latter was the irregular and the former the regular meeting.

Much stress is laid by counsel on the fact that in several instances of factional disputes in church societies, and the incorporation of the society on the initiative of one of the factions, the notice was given at a customary meeting held at the regular home of the society and at the one held at the place of worship of the members of the opposing faction as well, as in *West Koshkonong Cong. v. Ottesen,* 80 Wis. 62, 49 N. W. 24. We are unable to see any significance in that, since the statute makes no requirement for such double giving of the notice. No authority is referred to holding that such double notice is essential. Doubtless the legislative idea is that it shall be given in such a way as to furnish facilities to all concerned to receive information of the meeting to take action under the statute. That specifies distinctly the method of procedure. It was followed in this case, as it seems, in letter and spirit. Hence the agreement to incorporate and the preparation and execution of the certificate of organization and the due recording of the same dissolved the society and substituted in its place the corporate entity, as the trial court held. *West Koshkonong Cong. v. Ottesen, supra; Trustees v. Bly,* 73 N. Y. 323; *Holm v. Holm,* 81 Wis. 374, 51 N. W. 579. It should be noted that while there was a double giving out of the notice in *West Koshkonong Cong. v. Ottesen, supra,*—there being a factional division as in this case,—one faction holding its meetings at the church and the other at a neighboring schoolhouse, the case turned on the notice given at the customary meeting held in the church, no particular significance, seemingly, being given to the reading of the notice at the schoolhouse meeting.

*By the Court.*—The judgment is affirmed.