Complainant is a membership corporation organized in 1923 under the provision of "An act to incorporate associations not for pecuniary profit," revision of 1898. Comp. Stat. p. 125. Its members are "members of police departments in this state who are regularly elected or appointed delegates of their respective local associations." The principal defendant is such a local association, incorporated in 1904 by virtue of the same statute. In 1928, complainant revised its by-laws, article 10 of the revision follows: *Page 296 
"There shall be issued to each of the various locals by the recording state secretary and signed by him and the state president and state treasurer, a charter which shall remain the property of the state association. This charter shall contain the name, number and date of admittance of the local to the state association. The state president may revoke the charter of any local at any time for nonpayment of dues or assessments, or failure to comply with the state by-laws or rules or regulations of the state association, but in every such case shall bring the matter to the attention of the state association at the next regular or special meeting and the delegates shall decide if the local is entitled to the return of their charter and upon what condition, if any, and upon expulsion all books, books of account, records, papers, money and all property of every kind, except real property, shall become and be the property of and be vested in the New Jersey State Patrolmen's Benevolent Association, who are authorized to take possession of the same, and if necessary to institute and maintain appropriate legal action for the recovery of same. Should any local apply for and thereafter be reinstated and placed in good standing, the New Jersey State Patrolmen's Benevolent Association may return all such property so taken as aforesaid or recovered in any legal action."
The first half of this article had been adopted at some earlier period; that part beginning "and upon expulsion," first appeared in the 1928 by-laws. In 1930 complainant adopted these resolutions:
"Now therefore, be is resolved, that no member of the State Patrolmen's Benevolent Association or any of the Local Patrolmen's Benevolent Associations will be permitted to hold membership in any other State Police Association, while holding membership in the State Patrolmen's Benevolent Association, or any of the Local Patrolmen's Benevolent Associations affiliated with the State Patrolmen's Benevolent Association; and
"Be it further resolved, that the penalty for holding membership in any other State Police Association will be the expulsion from the State Patrolmen's Benevolent Association or from any of the Local Patrolmen's Benevolent Associations affiliated with the State Patrolmen's Benevolent Association and the member so expelled will not be entitled to any benefits and his name shall be immediately dropped from the Role of Membership in the State Patrolmen's Benevolent Association, or any of the Local Patrolmen's Benevolent Association affiliated with the State Patrolmen's Benevolent Association."
Fifteen members of defendant were also members of the Superior Police Officers Association of New Jersey. Defendant, in defiance of the resolution just quoted, refused to expel *Page 297 
these men, and thereupon for such refusal, complainant, in reliance on article 10 of its by-laws, revoked the "charter" of defendant, and made claim to all the personal property of defendant. The bill is filed to enforce this claim.
The word "charter" used in complainant's by-laws may cause confusion. It was not the document which evidenced the franchise of defendant to exist. The privilege to be, defendant had from the state alone. The charter issued by complainant was a token signifying that defendant was one of the local associations whose delegates composed the membership of complainant. The revocation of the charter would normally have no other effect than to expel from membership in complainant the defendant's delegates, and to relieve defendant of any obligations and deprive it of any benefits flowing from the membership of its delegates. But complainant insists that the revocation of the charter had the extraordinary result of transferring to complainant all of defendant's property, except real estate.
It does not appear that the defendant ever agreed to be bound by article 10 of complainant's by-laws, as revised in 1928. Neither the certificate of incorporation of defendant, nor its by-laws, mention complainant. The only part of its by-laws that may be taken to refer to complainant, is a provision for electing annually "three delegates to conventions." Perhaps I should assume that delegates from defendant were present, participating in complainant's meeting when complainant's by-laws were adopted. If so, the delegates had no power to bind defendant, certainly not to agree on its behalf to a contingent forfeiture of all its personalty.
Again, the acceptance by defendant of the so-called charter may have entailed some obligation. To consider this suggestion, I must go back a few years. In 1904, a month before defendant was incorporated, six patrolmen of West New York formed a voluntary association. They received from another voluntary association (with the same name as complainant) a charter — the same paper apparently which I have frequently mentioned. The six patrolmen had a meeting: "The constitution and by-laws of the New Jersey State Patrolmen's *Page 298 
Benevolent Association were read and adopted." These two voluntary associations were the predecessors of the parties to this suit, but the voluntary associations and their respective successors were, of course, not identical. Great Council, c., v. Mohican Tribe, c., 92 N.J. Eq. 593. The defendant upon incorporation apparently took over the charter which had been issued to its predecessor the voluntary association. Likewise, it may have adopted the constitution and by-laws of the state association. Further, there is no evidence of the contents of these old by-laws of the voluntary state association. There is no suggestion that defendant, when first organized or at any other time, agreed expressly or by implication to be bound by by-laws which might thereafter be adopted by the state association. In conclusion there is an entire lack of proof that the by-laws of complainant and especially article 10 thereof, constituted a contract between the parties to this suit. The case of complainant can rest only on the theory that such a contract existed and since proof thereof fails, the bill remains without the slightest support and must be dismissed.
The defendant by counter-claim prays that the resolution adopted by complainant in 1930 be adjudged inoperative and null and void. This is the resolution which forbade the local associations to retain in their ranks members of other police organizations. Defendant is under no obligation to obey the command of this resolution, but other local patrolmen's associations may perhaps be bound by it. I see no ground for decreeing it null and void. Defendant also prays that complainant be directed to restore its charter and to reinstate defendant as a local of complainant in good standing. This relief must also be denied. It does not appear that property rights are involved, or that complainant is not at liberty to pick and choose according to its fancy the local associations from whom it will receive delegates.
Lastly, defendant prays that complainant be restrained from interfering with the affairs of defendant and its properties. Defendant has several thousand dollars on deposit in a bank. When complainant revoked the charter of defendant it notified the bank that it claimed title to the deposit and *Page 299 
succeeded in inducing the bank to refuse to make payments on the order of defendant. Defendant probably has a remedy against the bank by an action at law, but all parties are before the court; the matter has been thoroughly aired and the defendant is entitled to this relief in the present suit. Let there be a decree accordingly.